ENTERED FEB 2 5 2015

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-13-23  ✓

MMM-CUM-02-17-15

DONNA WILLIAMS,

        Plaintiff,

v.

ISLAND NURSING HOME, INC,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

**FINDINGS AND ORDER FOR ENTRY OF JUDGMENT**

## I.    INTRODUCTION

On October 16, 2014, a Hancock County Jury found that the Defendant, Island Nursing Home, terminated Plaintiff in violation of Maine's Whistleblower Protection Act, but awarded no damages. On December 11, 2014, the Court conducted a hearing on Plaintiff's request for the equitable remedy of reinstatement, and for back pay. Plaintiff seeks an order that requires the Defendant to employ her as a Personal Support Specialist. Defendant is asking that the Court order that she be reinstated to her last-held position as a per diem Housekeeping Aide. Prior to hearing the parties stipulated that the amount of back pay is $1,823.44.[1]

The Court has considered the trial testimony, the trial exhibits, and the parties' written arguments, the last of which were received by the Court on January 5, 2015, and issues the following Findings and Order for Entry of Judgment.

---

[1] Plaintiff raises an issue as to whether the Defendant has waived pretrial interest. The Court does not find that a waiver occurred. Pre-trial interest of 3.16% shall be assessed against this amount.

1

## II. FINDINGS

The evidence submitted before the jury established that Plaintiff was employed by the Defendant during two time periods. The first was from August 20, 2005 through July 7, 2005 when she resigned without giving the requisite notice. She was re-hired on April 11, 2011 and worked until May 2, 2011 when she was terminated. During both time periods she was a per diem housekeeping aide, although she has aspired to become a Personal Support Specialist. There is no evidence, however, that she ever worked in such a position.

Plaintiff makes a number of arguments in her filings. First, she argues that she should be hired as a personal support specialist as she is "understandably concerned that (her supervisor) may harbor some animosity toward her and make her work life difficult should she return to the Housekeeping Department." (Pl.'s Post-Hearing Memorandum 7.) Plaintiff also argues that she was promised when hired that she would be a full-time employee within six months. Finally, she argues that she should be returned to a position that provides her with a minimum of 16 hours per week. The Court will address the arguments separately.

### 1. *Whether Hostility Requires Reinstatement to a Position of Personal Support Specialist or other Comparable Position*

After considering the testimony of the Plaintiff at trial and at hearing, as well as the testimony of the staff from the Island Nursing Home, the Court finds that the Plaintiff has failed to prove by a preponderance of evidence that she would be treated with hostility, much less "extraordinary antagonism," if she was reinstated to her previous position in the housekeeping department. *Harding v. Cianbro*, 473 F. Supp. 2d 89, 96 (D. Me. 2007) *(amended on reconsideration on other grounds)*. While the Plaintiff may

be subjectively concerned about hostility from Ms. Stephens, much of that seems to stem from events that took place years ago. In addition, the events described do not, when objectively viewed, justify her concerns. As the Court understands Plaintiff's complaint against Mary Stephens, on one occasion Ms. Stephens went to Plaintiff's home to talk to her after the Plaintiff quit her job without notice. However, there is very little in the record, other than Plaintiff's complaint that Ms. Stephens knocked loudly on her door, to suggest that Ms. Stephens was motivated by anything other than concern over why Plaintiff abruptly quit, and Ms. Stephen's desire to have Plaintiff come back to work. In addition, those claims are somewhat at odds with Plaintiff's exuberance about going back to work at the nursing home, most recently demonstrated in an unscheduled visit made to the nursing home shortly after the jury verdict. More fundamentally, the Court found the testimony of Lorie Morey and Mary Stephens to be credible as to how Plaintiff is positively viewed at the nursing home, and as to their belief that she would be treated fairly and professionally if she returns to work, including in the housekeeping department.

It is not possible to know with certainty why the jury found a violation of Maine's whistleblower statute but awarded no damages for the violation, and specifically for the emotional distress claimed. However, the jury finding suggests that this case can be distinguished from others where a Plaintiff has been subjected to hostility based upon race, ethnicity, disability, or gender. The record here is devoid of evidence that Plaintiff was treated with hostility or cruelty by co-workers or direct supervisors. The heart of the Plaintiff's claim was that the nursing home administration did not appropriately safeguard Plaintiff's confidential employee information, and that she was terminated by

3

the chief administrator of the nursing home as a result of complaints made by Plaintiff about that. These facts also set the case apart from cases where courts have been concerned with reinstating employees to a former position where they would be directly supervised by personnel directly involved in the violation. *Beckwith v. Int'l Mill Services, Inc.*, 1985 U.S. Dist. LEXIS 17000 (E.D. Pa. 1985). Given the absence of past hostility on this record, the Court concludes that reinstatement to a position outside of the housekeeping department is not necessary in order to prevent future hostility, or further violations of law.

2. *Promise of Fulltime Employment*

Plaintiff testified at trial and at the December 2014 hearing that she had been given a "promise" or "expectation" that within six months she would be working in a full-time position. (Pl.'s Post-Hearing Memorandum 1.) With respect to determining what hours Plaintiff would be working had she not been terminated, Lorie Morey testified that it is possible for an employee who begins as a per diem to end up working full time, but that she could not recall any employee who had taken that route to attain full time status since 2011. She testified that she had one employee who started out per diem that ended up working 56 hours per pay period, but that translates to 28 hours per week. She also clarified that there are two types of per diem employees, those that sign up for scheduled hours and those that do not. And she testified that since 2011 no housekeeping employees moved from working in housekeeping to working as personal support specialists. She was unable to recall whether any employees had made that move since 2005.

4

Ms. Morey further testified that when Plaintiff was rehired in 2011 she worked per diem, and was scheduled for every other weekend resulting in 16 hours per pay period. However, she noted that per diem employees could pick up additional hours, and it is clear to the Court that this was the case with the Plaintiff. Exhibit 15 suggests that Plaintiff worked an average of 23 hours per week. However, both Ms. Morey and Ms. Stephens testified that regular full or part-time positions do occasionally become available, and that per diem employees are able to apply for such positions when they do become available. However, there was no credible evidence admitted at trial supporting Plaintiff's claim that she had been promised full-time work within six months of hire, or that this was the practice for other employees at the nursing home.

3. *How many Hours Plaintiff would be Working if She had not been Terminated*

The evidence shows that the housekeeping department at the Island Nursing Home employs four regular non-per diem aides, two of which are full-time and two part-time. The evidence also suggests that there has not been much turn-over in these full and part-time positions over the years. However, when openings occur they are advertised in-house and seniority is given weight in filling the positions. Given this, and the absence of employment policies or contracts which guarantee "step" increases for pay or promotions for any employee, it is difficult to say with certainty how many hours Plaintiff would now be working. The Court finds the best evidence in the record on this issue to be the number of hours that she was working before termination, which Exhibit 15 shows was 184 hours over an eight-week period, May 2, 2011 to June 27, 2011. That comes to approximately 23 hours per week.

While it is *possible* that Plaintiff would be full-time by now, that is all that can be said given the state of the record evidence. The Court therefore concludes, based largely on how many hours she averaged before termination, that she should reinstated to a part-time position in the housekeeping department, which the Court defines as working 20 hours per week. However, given the Plaintiff's testimony about transportation problems, and her uncertainty as to when she would be available to return to work, the Court orders that she must either elect within 15 days of this order, in writing through counsel, to return to work within 45 days of the order as a part-time employee; or she shall elect within 15 days of this order, in writing through counsel, to return to work within 45 days of the order as a per diem employee for up to 20 hours per week. Under either scenario, she shall be paid based upon an average of the hourly rate paid to all other employees who since January 1, 2011 have worked as part time employees in that department. The Court uses this date as she was terminated in June of 2011, and concludes that if not terminated would likely have been working in that or another part-time position by now, and at a higher rate of pay.

Nothing in this order should be construed as prohibiting the Plaintiff, once she returns to work in the housekeeping department, from taking steps to be qualified for, or applying for any other available position for which she is now qualified, at the Island Nursing Home, including as a Personal Support Specialist.

### III.   CONCLUSION

The entry will be:

Judgment shall be entered for Plaintiff based upon the jury finding that she was terminated in violation of Maine's Whistleblower Protection Act. No monetary damages

6

are awarded, with the exception of back pay in the amount of $1,823.44 with pre-judgment interest.

Plaintiff shall be re-instated at the Island Nursing Home as a Housekeeping Aide. She shall within 15 days of this order elect, in writing through counsel, to begin work within 45 days of the order in a part-time position in the housekeeping department; or she shall within fifteen (15) days of the order elect, in writing through counsel, to begin work within forty-five (45) days of this order as a per diem employee in that department for up to twenty (20) hours per week. She shall be paid under either alternative based upon an average of the hourly rates paid to all other employees who since January 1, 2011 have worked as part-time employees in the housekeeping department at the Island Nursing Home.

Plaintiff's counsel may submit an affidavit of counsel fees for consideration by the Court. Defendant's counsel shall have fourteen (14) days after submission of the affidavit to file any objection to the amount sought. Plaintiff shall have her costs.

_2/17/15_
DATE

_____
SUPERIOR COURT JUSTICE,
BUSINESS AND CONSUMER COURT

**Donna Williams v. Island Nursing Home, Inc.**
**BCD-CV-13-23**


**Donna Williams**
    **Plaintiff**

        Counsel:                       Arthur Greif, Esq.
                                      82 Columbia St
                                      PO Box 2339
                                      Bangor, ME 04402-2339

**Island Nursing Home, Inc.**
    **Defendant**

        Counsel:                       Robyn March, Esq.
                                      Abigail Varga, Esq.
                                      477 Congress St. 14th Floor
                                      PO Box 15215
                                      Portland, ME 04112-5215